IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAURICE FLOYD | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 06-163 |
| | : | |
| ROBERT SHANNON, et al. | : | |

### MEMORANDUM AND ORDER

**Juan R. Sánchez, J.**                                                               November 13, 2006

      Maurice Floyd, serving 11 to 22 years in the State Correctional Institute at Frackville, Pennsylvania, petitions this Court for a writ of habeas corpus alleging three instances of ineffective assistance of counsel for failing to object during trial. This Court is precluded from reaching the merits of the first and the second two are without merit. I will adopt the Report and Recommendation of United States Magistrate Judge Peter B. Scuderi and dismiss Floyd's petition.

**FACTS**

      Shortly after 5 a.m. on October 8, 1997, John Brantley, an off-duty Philadelphia Police Officer working part-time delivering the Philadelphia Inquirer newspaper, was driving down Fisher Street in North Philadelphia. Around his waist, Brantley carried a bag containing $180.00 in cash, his Philadelphia Police Department badge, and his fully loaded 9-mm semiautomatic Glock service handgun. Two people approached Brantley from behind after he left his car to deliver a newspaper. Brantley turned around and Floyd, with an uncovered face and armed with a handgun, threatened Brantley to give up the bag or he would shoot him. Knowing his service revolver was in his bag, Brantley hesitated for a few seconds during which Floyd screamed for Brantley to turn over the bag. Floyd ultimately stuck the handgun into Brantley's side, and, after a three to five minute ordeal, Brantley took off the bag, dropped it on the ground, picked it up, and threw it into the middle of the

1

street. The two robbers retrieved the bag and fled on foot.

Later that morning, Brantley reported the attack and viewed over 200 photographs of suspects in the police department computer system, without finding a match to either of his assailants. About four months later, on March 20, 1998, Floyd was arrested with a handgun and numerous packets of crack cocaine. The recovered handgun was Brantley's service revolver acquired during the October 8, 1997 robbery. Brantley viewed another photographic array of potential suspects and positively identified Floyd as one of the perpetrators.

The charges arising from Floyd's arrest on March 20, 1998, for possession of a controlled substance and carrying a firearm without a license, and the charges involving the robbery of Officer Brantley, were consolidated for trial. On September 17, 1999, following a jury trial, Floyd was convicted of robbery, possessing an instrument of crime, carrying a firearm without a license, and possession of a controlled substance. On December 15, 1999, Floyd was sentenced to 10 to 20 years imprisonment on the robbery conviction, consecutive to a term of one to two years imprisonment on the carrying a firearm without a license conviction.

Floyd timely appealed his judgment of sentence, claiming the trial court erred by failing to suppress evidence, failing to grant a new trial because the jury verdict was against the weight of the evidence, and imposing a sentence outside the relevant guidelines. The Superior Court affirmed Floyd's sentence on March 7, 2001. *Commonwealth v. Floyd*, No. 410 EDA 2000, slip op. at 1-4 (Pa. Super. Ct. Mar. 7, 2001). Floyd did not file an *allocatur* petition with the Pennsylvania Supreme Court.

On February 22, 2002, Floyd filed a *pro se* Post Conviction Relief Act (PCRA) petition, 42 Pa. C.S. § 9541 *et seq.*; counsel was appointed and an amended petition was filed on August 27, 2002. In his amended PCRA petition, Floyd raised numerous claims, only two of which apply here:

(1) ineffective assistance of counsel for failing to object or request a mistrial when the prosecutor used evidence of Floyd's unemployment as a motive for the October 8, 1997 robbery, and (2) ineffective assistance of counsel for failing to object when the prosecutor vouched for the credibility of a Commonwealth witness during closing argument.  The PCRA court denied Floyd's request for relief on December 18, 2002, incorporating by reference the rationale set forth in the Commonwealth's motion to dismiss.  On appeal, the Superior Court vacated the PCRA court's order of dismissal, and remanded for the PCRA court to prepare an opinion pursuant to Pa. R. App. P. 1925(a).  *Commonwealth v. Floyd*, 850 A.2d 7 (Pa. Super Ct. 2004) (unpublished memorandum).  On remand, the PCRA court again dismissed Floyd's petition, and issued an opinion with an independent analysis of the issues raised in Floyd's petition.  Floyd appealed, raising two issues for review: (1) trial counsel's failure to object or request a mistrial when the prosecutor improperly ascribed unemployment as a motive for robbery, and (2) trial counsel's failure to object when the prosecutor allegedly vouched for the credibility of a Commonwealth witness.  The Superior Court affirmed the PCRA court's order of dismissal.  *Commonwealth v. Floyd*, No. 1302 EDA 2004, slip op. at 1 (Pa. Super. Ct. June 1, 2005).  On December 21, 2005, the Pennsylvania Supreme Court denied Floyd's *allocatur* petition.

On January 12, 2006, Floyd filed the instant *pro se* petition for federal habeas relief pursuant to 28 U.S.C. § 2254, as amended by the Anti-terrorism and Effective Death Penalty Act (AEDPA), claiming entitlement to the writ on three grounds of ineffective assistance of counsel:

> (1) Failing to object to the prosecutor's prejudicial closing arguments indicating Floyd's unemployment status;
> (2) Opening to highly prejudicial, inadmissible evidence during direct examination of Floyd's alibi witness; and
> (3) Failing to object to the prosecutor's vouching for the credibility of the Commonwealth's witness during closing argument.

3

Magistrate Judge Peter B. Scuderi recommended the petition be denied, and no certificate of appealability should issue because there has been no substantial showing of the denial of a constitutional right.  Floyd filed objections to the Report and Recommendation, which this Court reviews *de novo* pursuant to 28 U.S.C. § 636(b)(1)(C).  Finding each without merit, I will adopt the comprehensive Report and Recommendation of Magistrate Judge Scuderi.

**DISCUSSION**

This Court may not grant Floyd's petition, unless it appears he "has exhausted the remedies available in the courts of the State," or "there is an absence of available State corrective process." 28 U.S.C. § 2254(b)(1).[1]  The exhaustion requirement is excused, or deemed satisfied, in the latter case, "if requiring exhaustion would be futile, i.e., exhaustion is impossible due to procedural default and state law clearly forecloses review of the unexhausted claim." *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000) (citing *Lambert v. Blackwell*, 134 F.3d 506, 518-19 (3d Cir. 1997)); *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999) (holding if state procedural rules bar a petitioner from seeking further relief, exhaustion will be deemed satisfied because there is no available state corrective process).  A federal court is precluded from reaching the merits of "claims deemed exhausted because of a state procedural bar . . . unless the petitioner 'establishes cause and prejudice' or a 'fundamental miscarriage of justice' to excuse the default." *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000) (*quoting McCandless*, 172 F.3d at 260).  When a prisoner has failed to exhaust his state remedies, this Court may deny the petition on the merits. 28 U.S.C. § 2254(b)(2).

---

[1]This Court is mindful a *pro se* habeas petition, as has been filed in this case, and any supporting submissions must be construed liberally and with a measure of tolerance.  *Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998); *United States v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969), *cert. denied*, 399 U.S. 912 (1970).

This Court may grant Floyd's petition with respect to his exhausted claims, adjudicated on the merits by the courts of Pennsylvania, only if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The United States Supreme Court clarified the meanings of the AEDPA's "contrary to" and "unreasonable application of" clauses in *Williams v. Taylor*, 529 U.S. 362 (2000). In *Williams*, the Court explained "contrary to" as an instance when a state court "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412. The *Williams* Court further explained "unreasonable application of" contemplates a state court's identification of "the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id; Fountain v. Kyler*, 420 F.3d 267, 272 (3d Cir. 2005). The deference to state court adjudications required by 28 U.S.C. § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal case law, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." *Priester v. Vaughn*, 382 F.3d 394, 398 (3d Cir. 2004).

To prevail on the merits that he received ineffective assistance of counsel, Floyd must satisfy the Supreme Court's two-pronged test in *Strickland v. Washington*, 466 U.S. 668 (1984). He must show "counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's error, the result would have been different." *United States v. Nino*, 878 F.2d 101, 103 (3d Cir. 1989) (citing *Strickland*, 466 U.S. at 687-96).

This Court's analysis of Floyd's claims must begin with the "strong presumption" his counsel's performance was reasonable. *Strickland*, 466 U.S. at 689. "[Floyd] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotations omitted); *United States v. Kauffman*, 109 F.3d 186, 189-90 (3d Cir. 1997). To determine prejudice under the second prong, "the question is whether there is a reasonable probability that, absent the errors, the fact-finder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. It is "only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." *United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989).

To prevail, Floyd must show that counsel's performance was deficient to the point that counsel was not "functioning as the 'counsel' guaranteed by the Sixth Amendment" and that this deprived the defendant of a reliable and fair trial result, *Strickland*, 466 U.S. at 687, resulting in a trial so unfair that his conviction was a denial of due process. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Counsel's conduct must have had a "substantial and injurious effect" on the outcome of the trial. *Brecht v. Abramson*, 507 U.S. 619, 637 (1993). The petitioner cannot merely demonstrate the prosecutor's remarks were "undesirable, erroneous, or even universally condemned," but must show that the remarks actually deprived him of a fair trial. *Cupp v. Naughton*, 414 U.S. 141, 146 (1973) (discussing standard for establishing prosecutorial misconduct); *Smith v. Phillips*, 455 U.S. 209, 221 (1982).

The *Strickland* test qualifies under the AEDPA as "clearly established Federal law, as determined by the Supreme Court of the United States." *Williams*, 529 U.S. at 391. Floyd is therefore entitled to habeas relief only if the Pennsylvania courts' dismissal of his claims was a "decision that was contrary to, or involved an unreasonable application of," the *Strickland* test. 28

U.S.C. § 2254(d)(1).

Floyd first claims trial counsel was ineffective for failing to object to the prosecutor's reference to Floyd's unemployment during closing arguments. This claim is exhausted and the Court reaches the merits because Floyd raised it in his PCRA petition, in his 1925(b) statement appealing the denial of his PCRA petition and on appeal. This claim fails on the merits because the Pennsylvania Superior Court properly applied the *Strickland* test and found Floyd failed to establish prejudice given the overwhelming evidence of guilt, including the lack of a face mask, positive identification by the victim, and possession of the stolen gun.

The Pennsylvania Superior Court began its analysis by recognizing that the Commonwealth's use of unemployment status to establish motive for robbery is improper under Pennsylvania law. *Commonwealth v. Barkelbaugh*, 584 A.2d 927 (Pa. 1990); *Commonwealth v. Haight*, 525 A.2d 1199 (Pa. 1987). In *Haight*, the Pennsylvania Superior Court held the defendant was prejudiced by counsel's reference to his receipt of public aid because of the lack of other evidence. *Id.* at 1201. Similarly, in *Barkelbaugh*, the Pennsylvania Superior Court noted counsel's statements regarding employment status could have affected the result of the trial given the minimal evidence against the defendant. 584 A.2d at 929. Unlike the evidence in *Haight* and *Barkelbaugh*, though, the evidence against Floyd in this case is so overwhelming that, even without reference to Floyd's unemployment status, there is no reasonable probability the result of the trial would have been different. *Nino*, 878 F.2d at 103.

Floyd argues the appropriate inquiry is not whether there is sufficient evidence to support the verdict without the prosecutor's reference to his unemployment, but rather whether the error had a substantial influence on the verdict. Pet. 21, citing *Yohn v. Love*, 76 F.3d 508, 523 (3rd Cir. 1996)). Floyd's conviction was based on the evidence of his guilt rather than the comment made

7

during closing arguments. Under either inquiry, therefore, counsel's failure to object to the prosecutor's statement did not "deprive the defendant of a fair trial . . . whose result is unreliable." *Strickland*, 466 U.S. at 687.

Floyd next claims counsel was ineffective in questioning the defense alibi witness about Floyd's employment status because it suggested possible motive. This claim is procedurally defaulted because Floyd never raised it in state courts, and this Court declines to address its merits because Floyd has made no showing of either "cause and prejudice" or a "fundamental miscarriage of justice." *Lines*, 208 F.3d at 160 (*quoting McCandless*, 172 F.3d at 260). Floyd bears the burden of showing counsel's performance was so deficient that it rendered the trial and verdict unreliable. *Strickland*, 466 U.S. at 694.

Floyd also asserts counsel was ineffective for failing to object during closing argument to the prosecutor's vouching for the credibility of a Commonwealth witness. This claim is exhausted because it was raised in Floyd's PCRA petition and on appeal. "[A] prosecutor . . . may, within reasonable limits, comment on the credibility of a Commonwealth witness . . . especially . . . when the credibility of the witness has been previously attacked by the defense." *Commonwealth v. Miller*, 819 A.2d 504, 516 (Pa. 2002). In closing, the defense attacked the credibility of Officer Brantley and the prosecutor responded, arguing Officer Brantley should not be deemed *less* credible by the mere fact that he was an off-duty police officer. Because the remarks made by the prosecutor were appropriate, defense counsel's failure to object to them was reasonable. Failure to object to a claim without merits does not constitute ineffective assistance of counsel. *United State v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.").

Floyd's petition for writ of habeas corpus is without merit; an appropriate order follows.